UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEMETRIUS BARWICKS | No. 20-cr-563<br><br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Demetrius Barwicks (Barwicks) is charged with possessing a firearm after being convicted of a felony pursuant to 18 U.S.C. § 922(g)(1). During the course of the proceedings, concerns regarding Barwicks' competency were raised by his counsel and by the Court. Barwicks underwent a Court-ordered psychological evaluation pursuant to 18 U.S.C. § 4241(b), and the Court held an evidentiary hearing. As explained in this Opinion, upon review of the testimony and the record evidence, the Court finds Barwicks is mentally competent, as the Court is satisfied Barwicks both understands the nature and consequences of the proceedings, and that he is capable of assisting in his defense.

**Background**

Barwicks is charged with knowingly possessing a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1). R. 2, Indictment.[1]

During the course of the proceedings, concerns regarding Barwicks' competency were raised by his counsel. Specifically, Barwicks' ability to understand

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

the charges against him, and his decision whether to represent himself. R. 14, 06/30/2021 Minute Entry. Accordingly, Barwicks underwent psychiatric evaluation pursuant to 18 U.S.C. § 4241 and was determined to be competent by the evaluating forensic psychologist. R. 16, Order for Psychiatric Examination; R. 28, Dr. Robin Watkins Report (Report). Barwicks' original counsel withdrew, and Barwicks was appointed new counsel pursuant to the Criminal Justice Act (CJA). R. 32, 12/03/2021 Minute Entry; R. 33, Atty. Appearance. Shortly thereafter, the case was reassigned to this Court. R. 36, Reassignment Order.

During a status hearing on April 5, 2022, Barwicks' new counsel raised concerns regarding Barwicks' competency to understand the proceedings, and his ability to communicate effectively with his attorney and to help with the preparation of his defense. R. 46, 04/05/2022 Minute Entry. His new counsel requested an additional competency evaluation, and the Government did not object to the request. *Id.* Barwicks objected to the request for a second competency evaluation. *Id.* The Court engaged in a colloquy with Barwicks in which he repeatedly stated he did not understand the charges brought against him. *Id.*

Over Barwicks' objection, the Court ordered a second psychological evaluation, by an independent evaluator, pursuant to 18 U.S.C. § 4241(a) and (b), as the Court found there was probable cause to believe Barwicks may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he

is unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense. 04/05/2022 Minute Entry.[2]

Despite the Court order, Barwicks refused to complete the psychological examination by the independent evaluator, Dr. Stafford C. Henry. R. 63, 10/04/2022 Minute Entry; R. 69, Dr. Henry Letter. After the Court received the letter from Dr. Henry regarding Barwicks' refusal to complete the examination, the Court scheduled an evidentiary hearing to determine Barwicks' competency pursuant to 18 U.S.C. §§ 4241 and 4247(d). R. 73, 12/14/2022 Minute Entry; R. 94, 03/22/2023 Minute Entry.

The Court held an in-person evidentiary hearing on April 21, 2023. R. 95, 04/21/2023 Minute Entry. The Government called two witnesses from the Metropolitan Correctional Center (MCC). Holt Nicholson, a nurse practitioner that has treated Barwicks on multiple occasions for health concerns, and Dr. Robin Watkins, the forensic psychologist assigned to the forensic examination of Barwicks, who completed an evaluation on October 25, 2021. *See* Report at 1.[3] During the hearing, the parties stipulated that if Dr. Henry were called as a witness to testify, he would testify consistent with the information he provided in his letter. Defense did not call any witnesses, but did cross-examine both Ms. Nicholson and Dr. Watkins.

---

[2]During the status hearing, given the Court's concerns over Barwicks' competency, the Court did not engage with Barwicks regarding his requested waiver of his right to counsel. 04/05/2022 Minute Entry. Although Barwicks has previously requested that his attorney represent him in a standby capacity only, the Court appointed his attorney to serve as counsel until the conclusion of these competency proceedings, at which time the issue of representation will be revisited, if necessary. *Id.*

[3]The page numbers of the Report reflect the numbering of the Report itself, exclusive of the cover page.

At the conclusion of the hearing, the Court set a briefing schedule for submission of post-hearing briefs. 04/21/2023 Minute Entry. Neither the Government nor Barwicks filed any post-hearing briefs.

## Analysis

### A. Definition of Mental Competency

"The Constitution does not permit trial of an individual who lacks mental competency." *McManus v. Neal*, 779 F.3d 634, 656 (7th Cir. 2015) (cleaned up).[4] "A person is competent to stand trial when 'he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [ ] and . . . a rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "The due-process rule announced in *Dusky* has deep common-law origins and implements the fundamental principle that it is unjust to punish a person who lacks the mental capacity to understand the proceedings against him and participate in his own defense." *Id.* The mental-competency standard is identical for pleading guilty and for standing trial.[5] *Godinez v. Moran*, 509 U.S. 389, 398–99 (1993); *see also McManus*, 779 F.3d at 656

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, Cleaning Up Quotations, 18 Journal of Appellate Practice and Process 143 (2017).

[5]As noted above, the Court understands that Barwicks has previously expressed interest in representing himself in this matter. The Court notes that in order for Barwicks to represent himself, the Court will need to make a finding that he knowingly and voluntarily waived his right to counsel. The Court makes no finding at this time and will engage Barwicks in a *Faretta* colloquy at a later date if Barwicks still desires to represent himself in this matter.

(7th Cir. 2015) (trial); *United States v. Stoller*, 827 F.3d 591, 595–96 (7th Cir. 2016) (guilty plea).

### B. Sovereign Citizen Status

Before turning to examination of the record evidence regarding Barwicks' competency, the Court takes this opportunity to explain the sovereign citizen ideology, and how the Seventh Circuit has interpreted this ideology and defense in criminal proceedings. Generally, members of the sovereign citizen movement believe they are not subject to the federal government's jurisdiction. *United States v. Jones*, 65 F.4th 926, 928 (7th Cir. 2023). The Seventh Circuit has made clear that these sovereign citizen arguments are frivolous and meritless. *See United States v. Jonassen*, 759 F.3d 653, 657 n.2 (7th Cir. 2014) ("sovereign citizen" arguments can take many forms and use many titles, but at their core, "assert that the federal Government is illegitimate and insist that they are not subject to its jurisdiction. The defense has no conceivable validity in American law.") (cleaned up). Nevertheless, the Seventh Circuit has held that although sovereign citizen theories are "bizarre" and "reflect misunderstandings about criminal jurisdiction," there is no bright line barring a sovereign citizen from standing trial, and even in representing him or herself where the district court is satisfied that the defendant makes a knowing and voluntary waiver of his or her right to counsel. *Jones*, 65 F.4th at 930. Thus, that a defendant sincerely holds beliefs consistent with the sovereign citizen movement does not, in itself, mean a defendant is mentally incompetent. *Id.*

5

Of relevance here, Barwicks identifies as a sovereign citizen, and holds beliefs consistent with the sovereign citizen movement, based upon the forensic evaluation and statements that Barwicks has made to his counsel and to the Court in the course of this proceeding. The Court highlights Barwicks' status as a sovereign citizen, as this fact informs the competency analysis in certain respects. Specifically, Dr. Watkins' opinion is that much of Barwicks' behavior and non-cooperation during the competency evaluation process is attributable to his sovereign citizen ideology and is normative within the sovereign citizen sub-culture, and is not indicia of any competency-related concerns.

### C. Summary of Dr. Watkins' Report

In her Report, Dr. Watkins explained that the standard for competency to stand trial consists of both a factual and rational understanding of the nature and consequences of court proceedings, as well as the ability to assist in one's own defense. Report at 12. In rendering her Report, Dr. Watkins collected information through interviews, behavioral observations, psychological testing, and review of collateral information including phone calls and emails.

#### a. Expert Qualification

As a preliminary matter, and as stated on the record during the evidentiary hearing, the Court finds that Dr. Watkins is qualified as an expert witness. Dr. Watkins obtained her Ph.D. in clinical psychology in 2004. She is licensed in the State of Illinois in clinical psychology, and certified by the American Board of Professional Psychology. Dr. Watkins is a forensic psychologist for the MCC and has worked in

6

that capacity for over six years. Dr. Watkins routinely conducts forensic evaluations for the Bureau of Prisons (BOP) all around the country that typically address the question of competency to stand trial and mental status at the time of the charged offense. In her career, Dr. Watkins has completed between 280–320 competency evaluations. Thus, the Court finds Dr. Watkins is qualified as an expert.

### b. Evaluation

Dr. Watkins evaluated Barwicks throughout the period of July 15, 2021 to September 14, 2021 across multiple sessions, through both clinical interviews and assessments. Report at 1–2. During this period, Barwicks was also routinely observed by correctional and other psychology staff, including doctoral-level psychology practicum students. *Id.* at 2. In her report, Dr. Watkins described Barwicks as "a fair to poor historian," and "guarded," which led to him sharing only limited information; however, Dr. Watkins found the limited information he did share was "generally consistent with available collateral information." *Id.* This included review of documents and materials including the indictment, order for evaluation, USM-129 individual custody/detention report, criminal docket, BOP security records, medical records, and psychology records, a sampling of telephone calls placed, and emails sent by Barwicks, and contacts with Barwicks' attorney, the Assistant United States Attorney assigned to the case, and Barwicks' sister, Keawana Streator. *Id.*

In her Report, Dr. Watkins details Barwicks' developmental, educational history, work, social/relationship, medical, substance abuse, mental health, cultural, and criminal history. Report at 3–7. Of note, Barwicks reported no history of mental

health treatment, diagnosis, or hospitalization, although his sister, Ms. Streator, reported that Barwicks was diagnosed with schizophrenia in approximately 2012. *Id.* at 4. Similarly, Barwicks denied using illicit substances, other than marijuana as a teenager; however, Ms. Streator reported that Barwicks had used a drug named "Leaf," which caused "bizarre" behaviors including Barwicks taking off his clothes, talking to himself, crawling on the floor, and saying people were after him. *Id.* Ms. Streator explained that an ambulance was called at least one time after Barwicks had used "Leaf." *Id.*

Dr. Watkins discussed Barwicks' sovereign citizen beliefs in her report. Specifically, Dr. Watkins reported that Barwicks' "description of his beliefs about the government was generally consistent with those typically found in the Sovereign Citizen movement." Report at 4. Dr. Watkins stated that Barwicks frequently referenced the Uniform Commercial Code (UCC) when invoking his rights as he interacted with the examiner, and by extension, the Court. *Id.* at 5. When asked about the referral for evaluation, Dr. Watkins explained that Barwicks quoted the Bible, stating "[t]he Bible says a fool is gonna make it seem like you're the fool . . . they try to send you for psych evaluation to see if you're fit for trial." *Id.* at 5 (cleaned up). Further, Dr. Watkins reported that Barwicks described his current situation as a "civil war" and explained his refusal to answer competency-related questions as "because they have a secret contract. Once you say you understand [court concepts], you're telling them that you stand under their law. You're agreeing to their contract." *Id.* at 13. Dr. Watkins summarized that "[t]o all questions related to courtroom

information, even if factual and unrelated to his specific situation, [Barwicks] flatly replied, 'I plead the Fifth.'" *Id.*

In terms of his criminal history, Barwicks indicated to Dr. Watkins he did not want to discuss that topic; however, he did identify his 2016 charges as "[c]arjacking" and "a gun charge," and reported that he was released from incarceration in 2020. Report at 5. Based upon the BOP records reviewed by Dr. Watkins, Barwicks' criminal history includes charges of Possession of a Controlled Substance in 2005, Possession of Firearm in 2006, Stolen Vehicle in 2008, and Robbery Criminal Trespassing in 2010, and pending charges from 2018 including Hijacking a Vehicle, Kidnapping, and Assault. *Id.* at 6.

### c. Dr. Watkins' Findings

Dr. Watkins summarized Barwicks' mental status as "unremarkable" without showing any "overt indication of psychological symptomology," and explained that since his arrival at MCC there had not been any concerns related to his ability to function in the housing unit. Report at 6. Throughout the evaluation process, Dr. Watkins described that Barwicks provided "brief, minimal answers[,]" although he spoke at length about concepts consistent with the sovereign citizen ideology. *Id.* at 7–8. Although Barwicks complied with some interviews and testing, Dr. Watkins indicated that during competency-focused interviews and tasks, he would refuse to participate or answer questions. *Id.* at 8. Dr. Watkins notes that Barwicks consistently denied any psychological symptoms or distress, and was able to navigate the routines and structure of the BOP facility without difficulty. *Id.*

9

Dr. Watkins found that Barwicks knew who he was, where he was, the approximate time and date, his current circumstances, and his thought processes was "rational, relevant, coherent, and free of loose associations, tangentiality, or delusional content," with his insight and judgment intact. Report at 8. Although Barwicks has asthma and is medicated for that condition, he consistently denied any other medical condition or diagnosis during his evaluation with Dr. Watkins. *Id.* at 9. Dr. Watkins reported that upon arrival to the MCC, Barwicks was not referred for consideration of any psychotropic medication, and that he did not have any mental health symptomatology throughout the evaluation period. *Id.*

In conducting her evaluation of Barwicks, Dr. Watkins used the Personality Assessment Inventory (PAI), Shipley Institute of Living Scale – Second Edition (Shipley-2), and Miller Forensic Assessment of Symptoms Test (M-FAST). Report at 2. Barwicks' PAI produced an invalid PAI profile. *Id.* at 9. Dr. Watkins explained that this could be due to reading difficulties, careless responding, confusion, failure to follow instructions, etc., however, in her analysis of Barwicks' answers, she determined that Barwicks had endorsed items that, anecdotally, have been found to be frequently endorsed in an incarcerated population, but not the general population. *Id.* For example, Barwicks endorsed the notion that most people look forward to a visit to the dentist, and indicated he does not receive unwanted ads in the mail, which may be universally untrue in the general population, but may be true for incarcerated persons. *Id.* Overall, Dr. Watkins provided no clinical interpretation based on Barwicks' invalid PAI profile. *Id.*

The next test administered to Barwicks was the Shipley-2. Barwicks' Composite score was 72, which is "Well Below Average" in cognitive functioning, falling in the 3rd percentile. Report at 10. Barwicks' vocabulary score was 84, which is "Below Average" in the 14th percentile. *Id.* His Abstraction Standard score was 71, in the "Well Below Average" range in the 3rd percentile. *Id.* Dr. Watkins notes, however, that Barwicks only answered 9 of 25 items in that test, and concluded that given his level of education and observed reasoning abilities, his effort and distraction during the test, the scores "are judged to represent an underestimate of his true abilities and were likely impacted by poor effort and attention." *Id.*

Finally, Dr. Watkins administered the M-FAST test, which is a screening measure designed to gauge whether a person has a malingering psychopathology, meaning the person is likely to have feigned mental illness. Report at 10. Barwicks' results were "well below" the cutoff to suggest any malingering psychopathology, meaning he is unlikely to have feigned any mental illness. *Id.*

Based on her evaluation, Dr. Watkins did not diagnose Barwicks with any intellectual disability. However, based on Barwicks' history, both documentary and self-reported, Dr. Watkins diagnosed Barwicks with "Other Specified Personality Disorder, Antisocial Features." Report at 11. Specifically, Dr. Watkins found that Barwicks met three of the seven criteria for a diagnosis of Antisocial Personality Disorder (ASPD): (1) failure to conform to social norms based on his history of repeated arrests, (2) irritability and aggressiveness, and (3) lack of remorse. *Id.* at 10–11. For a diagnosis of ASPD, however, there must be evidence of Conduct Disorder

11

with onset before 15 years old, and the antisocial behaviors must not occur exclusively during the course of any schizophrenia or bipolar disorder. *Id.* at 11. But Dr. Watkins had only limited information about Barwicks' childhood, and, accordingly, did not have evidence to confirm any Conduct Disorder.

Dr. Watkins also found insufficient evidence to diagnose Barwicks with any substance abuse disorder, although she assigned a "rule-out diagnosis of Other (or Unknown) Substance Use Disorder" to "reflect the need for future evaluation in this area after Mr. Barwicks' charges have been resolved." Report at 11. Finally, although Ms. Streator told Dr. Watkins that Barwicks was previously diagnosed with schizophrenia, Dr. Watkins did not have access to any records supporting that diagnosis, and Dr. Watkins found "[d]uring the present evaluation, [Barwicks] consistently showed no indication of a mood disturbance or psychosis, nor did he exhibit impairment in functioning associated with a mental illness. Therefore, no mood or psychotic disorder is diagnosed at this time." *Id.*

In consideration of Barwicks' purported sovereign citizen ideology and belief system, Dr. Watkins acknowledged and concluded:

> Although Mr. Barwicks, at times, appeared hyperfocused on religious themes in conjunction with Sovereign Citizen ideology, the beliefs he described did not appear delusional in nature. Moreover, they are normative within the sub-culture of individuals espousing Sovereign Citizen beliefs. In other words, they are not the product of a mental illness, but are reflective of his adopting a framework of interacting with the legal system which he believes is valid and morally just.

Report at 11.

Overall, Dr. Watkins opined that Barwicks did not meet the criteria for a mental illness that would impair his competency, and that he is competent to proceed. Report at 14. Dr. Watkins found that Barwicks understood the current state of his court proceedings. Report at 13. Although Barwicks did not engage in the formal assessment of his competency, frequently "pleading the Fifth," Dr. Watkins found that "many of his statements and behaviors throughout the evaluation suggest intact understanding of key competency-related information." *Id.* at 14. As examples, Dr. Watkins described that Barwicks knew the status of his legal proceedings, inquired about his next court appearance, and understood the context of the competency evaluation itself. *Id.* Dr. Watkins also opined that Barwicks understood his rights by frequently invoking his right to remain silent, and demonstrated awareness of the court procedures typically utilized in the United States justice system. *Id.* In terms of Barwicks' ability to assist his counsel, it is Dr. Watkins' opinion that Barwicks' failure to engage with the Court or his counsel is a "willful choice, rather than a reflection of a lack of capacity to participate meaningfully in the proceedings." *Id.*

### D. Dr. Henry's Letter

The independent evaluator retained by counsel for Barwicks, Dr. Henry, memorialized his efforts to conduct the psychological evaluation of Barwicks in a letter filed with the Court. In the letter, Dr. Henry explained:

> On 23 November 2022, I had a face-to-face contact with Mr. Barwicks at the Metropolitan Correctional Center. Mr. Barwicks questioned my "jurisdiction" and told me he was "taking the fifth." All attempts to engage him in the assessment, including assurance that I was seeing him at the request of his attorneys, were not successful in changing his position and posture.

13

Dr. Henry Letter at 1.

The Court now turns to make its own findings based on the expert report of Dr. Watkins, the testimony at the hearing, and the record evidence as a whole.

**E. Barwicks' Competency To Proceed**

The record does not support any finding that Barwicks suffers from a mental disorder that renders him incompetent to proceed. *See* 18 U.S.C. § 4241(d). Dr. Watkins supported her opinions in her report and at the hearing that Barwicks understands the nature and consequences of the court proceedings, and has the ability to assist in his own defense. The defense has presented no evidence to rebut Dr. Watkins' findings. The Court addresses both Barwicks' understanding of the nature and consequences of the proceedings, and his ability to assist his counsel, below.

    **a. Barwicks understands the nature and consequences of the proceedings against him.**

Dr. Watkins testified that Barwicks was able to understand the nature of the charges against him because he identified what he was being charged with during her meetings with him. Further, Barwicks expressed understanding of the current state of his court proceedings when he reported to Dr. Watkins that his competency hearing had been continued because her Report had not yet been submitted. Although Barwicks refused to participate in competency-specific testing and questioning, Dr. Watkins' observations throughout the evaluation process were that Barwicks' statements and behaviors suggested an "intact understanding of key competency-

14

related information." Report at 14. This is evident by Barwicks' comprehension of the status of court proceedings, and, specifically of the competency hearing, and his understanding of certain tenets of criminal law such as his right to remain silent, which he frequently invoked throughout the evaluation process. *See id.*

Dr. Watkins also reviewed phone calls placed by Barwicks, and emails he sent while incarcerated, where Barwicks discussed his day-to-day activities, the status of his competency evaluation, his next court date, and his intention to represent himself. Report at 8. Dr. Watkins' opinion was that these communications underscored Barwicks' understanding of the nature and consequence of the proceedings against him as well. *See id.* at 14.

Further, the diagnostic testing conducted by Dr. Watkins and Barwicks' test results did not support any competency-related concerns. True, Barwicks' test results are well below average; however, Dr. Watkins testified that she felt Barwicks was distracted, lacked effort, and did not complete the testing, which impacted his results. *See* Report at 10. Dr. Watkins did not diagnose Barwicks with any intellectual disability.

Moreover, Dr. Watkins did not diagnose Barwicks with any psychotic disorder which would affect his mental competency. Although Ms. Streator shared that she believed Barwicks was diagnosed with schizophrenia during a past incarceration, throughout the evaluation period Dr. Watkins did not observe symptoms consistent with that diagnosis. Report at 9. Further, Barwicks was never referred for consideration of any psychotropic medication, and that he did not have any mental

15

health symptomatology throughout the evaluation period, and was able to navigate the routine at the MCC. *Id.*

During the competency hearing, Dr. Watkins was asked whether Barwicks' sovereign citizen beliefs were indicative of any mental illness, and, consistent with her Report, Dr. Watkins testified that Barwicks espoused beliefs that were normative in the sub-culture, and Barwicks sincerely believes those ideas are correct and just, however his beliefs are not the product of any mental illness. *See* Report at 14.

Finally, although the evaluation was completed in 2021, Dr. Watkins testified that she has interacted with Barwicks at the MCC since that time. Based on those interactions, she does not have a different opinion on his mental health condition. Significantly, the Court notes that Barwicks refused to sit for a second competency evaluation, as ordered by the Court, again evincing his non-cooperation in the litigation process. Nevertheless, the Court finds Dr. Watkins offered credible testimony, and accepts her opinions on Barwicks' competency. As described in more detail below, the record also supports that since 2021 Barwicks has been able to navigate the routines and structure of the BOP facility without difficulty, and Ms. Nicholson's testimony supports this finding as well. Further, there is no record evidence to refute the opinions offered by Dr. Watkins, as the only expert who authored a report and testified at the evidentiary hearing regarding Barwicks' competency.

Ultimately, the Court finds that the questions about Barwicks' competency emanate from his non-participation in the criminal litigation process based upon his

16

sovereign citizen beliefs, and not from his failure to understand the proceedings. *See Jones*, 65 F.4th at 930. Overall, based on the unrebutted evidence in the record, the Court finds Barwicks understands the nature and consequences of the proceedings.

### b. Barwicks is capable of assisting his counsel.

Dr. Watkins also made a finding that Barwicks is capable of assisting his counsel with his defense. Of importance here is the distinction between capability and willingness. Dr. Watkins testified at length regarding Barwicks' lack of cooperation in the evaluation process, which she attributed to his unwillingness to participate in the process—and derivative of his sovereign citizen beliefs—and not because of any inability to participate in the evaluation because of a competency-related concern.

The Court is mindful that Barwicks' beliefs regarding the sovereign citizen movement are relevant to the competency evaluation to the extent that individuals with mental illness may espouse beliefs associated with the movement. However, Dr. Watkins testified regarding her opinion that the statements Barwicks made regarding the sovereign citizen ideology were organized and relevant, and he was able to describe how it applied to this case and his interactions with Dr. Watkins. Report at 8. Accordingly, Dr. Watkins concluded that Barwicks' comments were normative within the sovereign citizen sub-culture, and were not distorted or influenced by mental illness. *Id.* at 14. Crucially, Defense counsel has adduced no evidence to undermine Dr. Watkins' opinion on this topic.

17

Further, Ms. Nicholson had several visits from Barwicks in the MCC health clinic, and she explained that during those visits he was able to describe his symptoms, and to verbalize his understanding to her when they discussed patient education topics, including access to healthcare. Barwicks evidenced his understanding of access to healthcare, for example, by returning to the clinic for treatment when he had a medical issue or need. Further, Ms. Nicholson testified that Barwicks answered her questions about how he was feeling with relevant responses. The Court finds it is significant that Barwicks was able to interact with Ms. Nicholson regarding his physical health concerns without issue as demonstrative of his competence, and also supportive of Dr. Watkins' assessment that Barwicks has been able to navigate the routines and structure of the MCC without difficulty. *See* Report at 8. Ms. Nicholson's interactions with Barwicks also support that he is capable of assisting his counsel.

Based on the record evidence, and the Court's own interactions with Barwicks throughout this case, the Court understands that Barwicks' unwillingness to interact or cooperate with his counsel is a tenet of Barwicks' sovereign citizen beliefs. The Court's task here, however, is understanding whether Barwicks is capable of assisting his counsel. The Court finds that based on the record evidence Barwicks is able to cooperate and assist in his defense if he so chooses.

## Conclusion

In sum, the Court finds that Barwicks is mentally competent: he understands the nature and consequences of the proceedings again him and he can assist properly

in his defense. The Court will consider any steps, in an abundance of caution, to accommodate additional time or explanation that Barwicks may need during any phase of the case. Defense counsel shall confer with Barwicks to decide on the next step in this case. The matter remains scheduled for a telephonic status on June 26, 2023 at 10:00 a.m. Given Barwicks' past statements to his counsel and the Court that he intends to represent himself in this matter, Defense counsel and Barwicks should be prepared to address that issue at the next status hearing.

Dated: June 16, 2023

United States District Judge
Franklin U. Valderrama